UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHEILA LYN VAN DEN BLOOMER,

        Plaintiff,

  v.                                             Case No.   12-C-1275

CAROLYN W COLVIN,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

      This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Sheila Lyn Van Den Bloomer's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq*., and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Plaintiff filed applications to DIB and SSI in June 2009 and July 2009, alleging disability beginning July 2008, due to back impairments, shoulder impairments, bipolar disorder, depression, and alcohol abuse**.** (Tr. 30, 137-47, 177.) At the time of her alleged onset date, Plaintiff was 32 years old. Her application was denied initially and on reconsideration, and Plaintiff requested a hearing. (Tr. 93-100, 102-06.) In June 2011, a hearing was held before Administrative Law Judge (ALJ) Dale A. Garwal at which Plaintiff, represented by counsel, and a vocational expert testified. (Tr. 73-92.)

      In a decision issued on July 11, 2011, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform "simple, routine tasks." (Tr. 33.) Using this RFC, the ALJ

found that Plaintiff could not perform her past relevant work, but could perform other work existing in significant numbers in the national economy, and therefore, was not disabled. (Tr. 29, 35-36.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.) This action followed, and Plaintiff filed a motion for summary judgment on May 3, 2013. (ECF No. 11.)

## I. Background

Plaintiff has been diagnosed with various back and leg ailments, bipolar disorder, depression, alcohol abuse, and obsessive compulsive disorder (OCD). Plaintiff is married and has four children, and her family has an extensive history with Calumet County Human Services for domestic violence, child care, and substance abuse issues. On January 29, 2001, when Plaintiff was 24 years old, she suffered a fractured tibia and fibula after being ejected from a snowmobile that she had been operating while intoxicated. (Tr. 707.) On February 8, 2001 surgery was performed and a rod was inserted into Van Den Bloomer's right tibia. (Tr. 703.) Records from Calumet County Human Services indicate that Van Den Bloomer was also being treated with medication for depressive symptoms as early as April 27, 2001. (Tr. 707.) On May 23, 2008 Newcare Integrated Health Services noted that Van Den Bloomer complained of right side sciatic pain, and she was diagnosed with lumbar disc, sciatica, lumbar and sacral subluxations (segmental dysfunction). (Tr. 228-29.) Plaintiff subsequently began a course of chiropractic spinal and pelvic adjustments, and she showed steady improvement but discontinued treatment due to financial difficulty. (*Id.*)

Plaintiff sought further evaluation at ThedaCare in Kimblerly, WI on July 30, 2008 from Dr. Douglas P. Moard. Dr. Moard initiated a physical therapy regimen for her sciatic pain and noted

2

that Plaintiff had already been prescribed medication for bipolar disorder. (Tr. 318.) In November of 2008, Dr. Moard observed that Van Den Bloomer was not compliant with her bipolar medication and was actively drinking. (Tr. 328.) On February 25, 2009, Dr. Moard diagnosed Plaintiff with OCD, bipolar disorder, and numbness and tingling in her right hand. (Tr. 337.) By April 9, 2009, Plaintiff was noted to be "excessively sedated" and admitted to drinking six 16-ounce beers the night before her appointment. (Tr. 339.) Plaintiff continued to increase her alcohol consumption in the following months, and on June 3, 2009, Dr. Moard noted that Plaintiff was noncompliant with treatment and not interested in getting treatment for alcohol abuse. (Tr. 347.) Dr. Moard observed that Plaintiff had a history of alcoholism, had recently taken a job running a bar, and had been arrested and charged with disorderly conduct for resisting arrest after an incident at the bar. (*Id.*) Plaintiff reported on June 18, 2009 that she had decreased her drinking to one night per week and her mood had improved. (Tr. 350.) Dr. Moard reported on July 17, 2009 that Plaintiff's bipolar disease and OCD were "doing reasonably well." (Tr. 356.)

Plaintiff was hospitalized on September 26, 2009 for acute alcohol intoxication, and Appleton Medical Center found that her blood alcohol level was .245. (Tr. 294.) Dr. Dennis Fitzsimmons adjusted Plaintiff's medication by prescribing Zoloft, discontinuing her use of Depakote, piroxicam, and tramadol, and decreasing her dosage of diazepam. (*Id.*) Calumet County Human Services noted on October 1, 2009, that Plaintiff's hospitalization was a suicide attempt and initiated a counseling program. (Tr. 401.) Plaintiff was seen by Dr. Bayer at Westhill Behavioral Health in April 2010, and Dr. Bayer described her energy and motivation as "quite poor." (Tr. 756.) Plaintiff commenced therapy with Dennis Fischer at Calumet County Human Services, and she reported she had been sleeping 14 to 16 hours per night for the past six months. (Tr. 603.) Fischer

3

noted that Plaintiff experienced a pattern of "mood fluctuation." (*Id.*) Plaintiff reported feeling less depressed by May 19th, 2010, but by June 30th, 2010, she had been drinking and put her hand through a glass window after a dispute with her husband. (Tr. 753.) On September 24, 2010, Plaintiff denied using any alcohol for the past three months, but she admitted to drinking again on October 15, 2010. (Tr. 599.) On November 19, 2010, Plaintiff reported "a much brighter affect and positive attitude . . . despite ongoing problems with her husband, children and finances." (Tr. 597.) She also reported that she had been less angry recently and had a lower stress level because she had recently quit her job. (Tr. 750.)

Despite this apparent progress, on December 19, 2010, Plaintiff fell down the stairs while intoxicated. (Tr. 444.) She fractured her patella and was knocked unconscious for about half an hour. (Tr. 596.) Dr. David Ritzow treated Plaintiff on January 14, 2011, and he anticipated that Plaintiff would be able to return to sedentary work approximately two months after surgery to fix her patella. (Tr. 714.) On February 18, 2011, Plaintiff returned to counseling sessions with Dennis Fischer. Fischer made the following notation:

> Sheila reports that she has been drinking about a case a beer a week on average. She contends that it is to deal with chronic pain. I confront that I had not heard this before and suspect that she may be seeking medication for some other purpose such as selling it. She denies this. She also denies that she needs any increased level of care to attend to her substance abuse issues.

(Tr. 593.) Plaintiff and Fischer also discussed her mood, including her "interpersonal sensitivity which has led her to walk off multiple jobs due to criticism" and "her tendencies toward marital infidelity, especially when she has opportunities with co-workers." (Tr. 741.)

At the June 3, 2011 hearing, Plaintiff testified that when she is manic and binge drinks, she gets "angry and violent." (Tr. 87.) She also stated that she has difficulty maintaining her attention

4

and focus. The ALJ asked if she could "watch a half an hour television program and follow along with what's in it," and she answered affirmatively. (*Id.*) The ALJ then asked Plaintiff if she could do the same for an hour-long program, and she replied that she could not. (*Id.*)

## II. The ALJ's Decision

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a range of sedentary work but with the following nonexertional limitations: the claimant is limited to simple, routine tasks. (Tr. 33.) The ALJ also concluded that Plaintiff is restricted to limited interaction with public and co-workers. (*Id.*) In reaching this conclusion, the ALJ found that Plaintiff suffered from the following severe impairments: back pain, lumbar/sacral sublaxation; bipolar disorder, depression and alcohol abuse. (Tr. 30, 32.) The ALJ found that Plaintiff's physical impairments did not preclude work. The ALJ credited the opinions of Dr. Ronald Fischer, who reported that Plaintiff's back problems showed steady improvement. (Tr. 34.)

The ALJ also addressed Plaintiffs mental limitations, noting that Plaintiff had moderate difficulties in maintaining social functioning, moderate difficulties in concentration, persistence, or pace, and mild restrictions in activities of daily living. (Tr. 32.) Despite these findings, the ALJ concluded that Plaintiff's mental health issues did not preclude work. The ALJ noted that Plaintiff had been psychiatrically hospitalized for two days in September 2009 and diagnosed with a mood disorder, and he also recounted Plaintiff's "wide-ranging history of alcohol abuse." (Tr. 34.) The ALJ observed that Plaintiff did not take her bipolar medication as prescribed and was consuming substantial amounts of alcohol. (*Id.*) He further noted that Plaintiff acknowledged her drinking affects her mood disorder but did not want to stop drinking. (*Id.*) The ALJ found that Plaintiff's

5

"alcohol abuse and non-compliant medication follow-up lessen[ed] the overall credibility of [Plaintiff's] allegations and her testimony." (*Id.*) The ALJ credited the State Agency assessments, including the psychological assessments performed by Dr. Spear and Dr. Pape, over the findings of the treating physician and the statements of Plaintiff's counselor, Kathleen Connolly. (Tr. 33-34.) Based on all the above, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects" of her symptoms were not credible to the extent that they were inconsistent with his RFC assessment. (*Id.*) The ALJ found that Plaintiff could not perform her past relevant work but could perform other work existing in significant numbers national economy and was not disabled. (Tr. 35-36.)

### III. Analysis

Under 42 U.S.C. § 405(g), "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). On review, the court will overturn the Commissioner's final decision only if it lacks support by substantial evidence, is grounded in legal error, or is too poorly articulated to permit meaningful review. *Hopgood ex rel. L.G. v. Astrue,* 578 F.3d 696, 699 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel,* 207 F.3d 431, 434 (7th Cir. 2000).

Plaintiff's primary argument is that the ALJ's decision must be reversed because the ALJ's question to the vocational expert failed to account for Plaintiff's limitations in concentration, persistence, or pace. The ALJ's question to the vocational expert limited the hypothetical individual to "simple, routine tasks" but did not further elaborate on difficulties with concentration,

persistence, or pace. Based on the ALJ's hypothetical, the vocational expert opined that Plaintiff could work as a mail clerk, electric sealing machine operator, charge account clerk, or telephone quote clerk. (Tr. 88-90.) Plaintiff contends that the limitations in concentration, persistence, or pace found by the ALJ and the State Agency psychologists were not incorporated into the hypothetical. To understand Plaintiff's argument, it will first be necessary to describe how the Social Security Administration ("SSA") evaluates mental impairments.

The SSA uses a "special technique" to determine whether a mental impairment is severe and whether it meets the criteria for one of the Listings for mental impairments in Part A of the Listing of Impairments. 20 C.F.R. § 1520a. The special technique used to evaluate mental impairments requires first an evaluation of the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he has a medically determinable mental impairment. 20 C.F.R. § 1520a(b)(1). If a mental impairment is found, SSA then rates the degree of functional limitation resulting from it in four broad functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 1520a(c)(3) and (4). The degree of limitation in the first three areas is rated on a five point scale: none, mild, moderate, marked, and extreme. The degree of limitation for episodes of decomposition is rated on a four-point scale: none, one or two, three, four or more. These ratings are then used to determine whether the mental impairment is severe and, if so, whether it meets the criteria of one of the Listings for mental impairments. If a claimant's impairment meets or medically equals the criteria for one of the listed impairments, the individual is deemed disabled at step three of the SSA's sequential evaluation process. 20 C.F.R. § 1520(d). If, however, a mental impairment is severe, but does not meet or medically equal a listed impairment, then the SSA assesses the claimant's RFC.

20 C.F.R. § 1520a(d)(3). A Psychiatric Review Technique Form (PRT), signed by a medical or psychological consultant, is used to document the various steps required by the special technique to evaluate a mental impairment. A second form, the Mental Residual Functional Capacity Assessment (MRFCA), is used to document the evaluation required when the claimant's impairment, though severe, does not meet or exceed the criteria of a Listing. The use of these forms is explained in the SSA's Program Operations Manual System ("POMS"), which is available at https://secure.ssa.gov/apps10/poms.nsf. *See* DI 24505.025 and DI 24510.060.

In this case, State Agency psychologists Jack Spear and Deborah Pape completed PRT and MRFCA forms. In September 2009, Dr. Spear checked boxes on the PRT form indicating Plaintiff had affective disorders and anxiety-related disorders. (Tr. 241.) In rating the degree of Plaintiff's functional limitation on the B criteria of the applicable Listings, Dr. Spear noted that she had moderate limitations in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 251.) Dr. Spear indicated that Plaintiff had a severe mental impairment but did not meet any of the Listings that applied. (Tr. 251.) He proceeded to assess Plaintiff's RFC using the MRFCA form.

Section I of the MRFCA form includes a worksheet entitled "Summary Conclusions." There the form lists twenty mental health functions grouped under four main categories: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. To the right of each of the mental health functions is a series of decision checkblocks containing the following options: not significantly limited; moderately limited; markedly limited; no evidence of limitation in this category; and not ratable on available evidence. DI 24510.060. In completing

8

Section I of the MRFCA, Dr. Spear checked that Plaintiff was moderately limited in six mental functions. (Tr. 255-56.) In the sustained concentration and persistence category, he marked that Plaintiff was moderately limited in two areas: her ability to carry out detailed instructions; and her ability to maintain attention and concentration for extended periods of time. (*Id.*)

Section III of the MRFCA form is entitled "Functional Capacity Assessment" and is where the actual mental RFC is to be recorded in narrative form. DI 24510.060. Dr. Spear's RFC included the following:

> Notes from her PMD report her bipolar and OCD are stable w/ meds. She is sleeping well and energy level is good. . . . [T]he claimant continues to work part-time, no problems w/ personal care, prepares meals 2-3x per week, some OCD symptoms when folding laundry, gets out of the house daily, shops, and socializes with others at work. Her ability to handle stress or adapt to changes is "not well." Her statements are fully credible. [Plaintiff] does not show any marked deficits on the PRTF/MRFC and is fully capable of unskilled routine work.

(Tr. 257.)

In March 2010, Dr. Deborah Pape evaluated Plaintiff's mental impairments using the SSA's special technique. On the PRT, Dr. Pape checked boxes indicating Plaintiff had affective disorders, anxiety-related disorders, and substance addiction disorders. (Tr. 421.) In rating the degree of Plaintiff's functional limitation on the B criteria of the applicable Listings, Dr. Spear noted that she had no limitations in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. (Tr. 431.) Like Dr. Spear, Dr. Pape found that Plaintiff had a severe mental impairment but did not meet any of the Listings that applied. (Tr. 432.) On Section I of the MRFCA, Dr. Pape checked that Plaintiff was moderately limited in seven mental functions, including the following moderate limitations under the category of sustained concentration and

9

persistence: the ability to maintain attention and concentration for extended periods of time; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 436-36.)

Dr. Pape's narrative RFC in Section III recalled Plaintiff's history of alcohol abuse and treatment for mood and anxiety disorders and noted that Plaintiff had cut back on her drinking, but had not stopped entirely. (Tr. 437.) Dr. Pape's RFC assessment also included the following:

> [Plaintiff] has difficulty in getting along with family as well as difficulty managing stress and changes. . . . Various treatment notes indicate that she wants to treat her depression and alcohol use, but does not comply with treatment in a consistent manner. . . . Her symptoms appear to cause moderate limitations in her ability to maintain [concentration, persistence, or pace] and social functioning. She retains the ability to perform the basic mental demands of unskilled work.

(*Id.*)

The court now turns to Plaintiff's argument that the limitations in concentration, persistence, or pace found by the ALJ and the State Agency psychologists were not incorporated into the hypothetical. Plaintiff relies on *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010) and *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) for the proposition that an ALJ may not employ phrases like "simple, routine tasks" in the RFC finding when the ALJ or a consulting psychologist has found limitations in concentration, persistence, or pace. According to Plaintiff, "simple, routine tasks" does not encapsulate limitations in concentration, persistence, or pace, especially for a claimant with bipolar disorder whose mood fluctuations cause good and bad days.

10

It should be noted at the outset that Plaintiff has misstated Dr. Spear and Dr. Pape's findings on the PRT forms and the ALJ's adoption of those findings. Dr. Spear and Dr. Pape found that Plaintiff had moderate limitations in "maintaining concentration, persistence *or* pace," not in maintaining concentration persistence *and* pace, as Plaintiff contends. (Tr. 251, 431.) Thus, these are general findings that say little about the specific nature of Plaintiff's limitations. Plaintiff's argument ignores the distinction between the ALJ's evaluation of the severity of Plaintiff's limitations at steps two and three and the ALJ's formulation of the RFC for steps four and five. The ALJ explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 32.) This statement is consistent with the POMS instructions for the PRT and the Agency's special technique described in the regulations. *See* 20 C.F.R. § 404.1520a; *see also Bates v. Astrue*, No. 2:11CV361, 2012 WL 3598296, at *8 (N.D. Ind. Aug. 20, 2012) ("[T]he ALJ did find . . . that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace, but that finding was made in the context of analyzing, at steps two and three, whether Plaintiff's mental condition was severe . . . and that evaluation is separate from the evaluation of RFC."). Therefore, the ALJ was justified in conducting further analysis beyond his findings at steps two and three to determine whether and how Plaintiff's limitations in concentration, persistence, or pace should have been incorporated into the RFC and hypothetical.

11

To further evaluate Plaintiff's limitations, the ALJ looked to the opinions of the State Agency psychologists, who translated their findings into functional RFC assessments. The Seventh Circuit has held that when a medical source of record translates his findings into a particular RFC assessment, the ALJ may reasonably rely on that assessment to formulate his RFC finding and hypothetical. In *Johansen v. Barnhart*, a state agency physician concluded that the claimant fell somewhere between "Not Significantly Limited" and "Moderately Limited" in three areas. *Johansen v. Barnhart,* 314 F.3d 283, 285-86 (7th Cir. 2002). The doctor then "translated his worksheet observations into an assessment of Johansen's mental residual functional capacity (RFC) and concluded that he could perform repetitive, low-stress work." *Id.* at 286. The ALJ then incorporated this RFC into a hypothetical question to the vocational expert, asking whether there would be available jobs for someone of the claimant's age and experience who could perform low-stress, repetitive, unskilled work. The Seventh Circuit found this perfectly acceptable: "because Dr. Matkom was the only medical expert who made an RFC determination, the ALJ reasonably relied upon his opinion in formulating the hypothetical to present to the [vocational expert]." *Id.* at 289; *see also Milliken v. Astrue*, 397 F. App'x 218, 221-22 (7th Cir. 2010) (affirming ALJ's RFC finding limiting claimant to unskilled work because medical expert opined that the claimant retained ability to perform "unskilled work tasks" despite her limitations in concentration, persistence, or pace); *Calhoun v. Colvin*, No. 1:12-CV-00204, 2013 WL 3834750, at *10 (N.D. Ind. July 24, 2013) (affirming ALJ's RFC finding limiting claimant to "simple, repetitive tasks" because the ALJ relied "almost verbatim" on RFC translation of the State Agency psychologist).

This case is much more like *Johansen v. Barnhart* than *Stewart v. Astrue* or *O'Connor-Spinner v. Astrue*. Here, the ALJ relied on two psychologists who translated their findings into RFC

12

assessments, and these assessments were essentially identical: "unskilled work" and "unskilled routine work." The ALJ merely changed the word "unskilled" to "simple," which reasonably comprises unskilled work. *See* 20 C.F.R. § 404.1568(a) (defining unskilled work as "work which needs little or no judgment to do *simple* duties that can be learned on the job in a short period of time")(emphasis added). Unlike the cases on which Plaintiff's argument rests, it was the medical consultant, not the ALJ, that translated Plaintiff's limitations into an RFC for simple, routine tasks. Therefore, when the ALJ included simple, routine tasks in the hypothetical to the vocational expert, he sufficiently incorporated Plaintiff's limitations in concentration, persistence, or pace.

Plaintiff argues further that the ALJ's RFC finding was insufficient because the ALJ is required to address each checkbox in Section I of the MRFCA form concerning limitations in concentration, persistence, or pace. The court rejects this argument because the psychologists' RFC assessments in Section III of the MRFCA already incorporate the limitations indicated in the checkboxes on the worksheet. In completing Section I of the MRFCA form, the medical consultant is instructed to check box one indicating that the claimant is "'Not Significantly Limited,' when the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity." POMS, DI 24510.063. Box two, indicating the claimant is "Moderately Limited," is to be checked "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." *Id.* In other words, a "moderate" limitation on the MRFCA means only that there is some limitation. The instructions note that "[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III." POMS, DI 24510.063. Furthermore, Section I is not considered part of the RFC. According to the POMS, "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the

13

adequacy of documentation and **does not constitute the RFC assessment**." POMS DI 24510.060 (bold original); *see also Smith v. Commissioner of Social Sec.*, 631 F.3d 632, 637 (3d Cir. 2010) ("Because Smith cannot rely on the worksheet component of the Mental Residual Functional Capacity Assessment to contend that the hypothetical question was deficient, his argument is without merit as it pertains to Dr. Tan and Dr. Graff."). Here, Dr. Pape specifically noted in Section III of the MRFCA form that "[Plaintiff's] symptoms appear to cause moderate limitations in her ability to maintain [concentration, persistence, or pace]," which provides further support that Dr. Pape considered the checkboxes in Section I when she concluded that Plaintiff was still capable of unskilled work. (Tr. 437.)

## IV. Conclusion

In sum, the State Agency psychologists followed the Agency's detailed instructions for completing the PRT and the MRFCA forms, and they found that despite Plaintiff's moderate limitations with concentration, persistence, or pace, she retained the capacity to perform unskilled work. The ALJ reasonably relied on these translations when formulating his RFC assessment and hypothetical, and Plaintiff is therefore not entitled to a remand pursuant to 42 U.S.C. § 405(g). The decision of the Commissioner is affirmed, and Plaintiff's motion for summary judgment is denied.

Dated this   7th   day of October, 2013.

                                    s/ William C. Griesbach
                                    William C. Griesbach, Chief Judge
                                    United States District Court